13-1573-(L)
In re Bank of America

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

_____

August Term, 2013

(Argued: April 22, 2014        Decided: November 5, 2014)

Docket No. 13-1573(L), 13-1677(con), 13-1798(con), 13-1830(con), 13-1853(con)
_____

IN RE BANK OF AMERICA CORP. SECURITIES, DERIVATIVE, AND EMPLOYEE
RETIREMENT INCOME SECURITY ACT (ERISA) LITIGATION
-------------------------------

MICHAEL WASHENIK, ORLOFF FAMILY TRUST DTD 10/3/91, ORLOFF FAMILY TRUST DTD
12/31/01, ST. STEPHEN, INC., LEONARD MASIOWSKI, MARYANN MASIOWSKI, MICHAEL J. RINIS,
BABETTE RINIS, MICHAEL J. RINIS, IRA,[1]

*Objectors–Appellants*,

CHARLES N. DORNFEST,[2]

*Plaintiff*,

v.

PUBLIC PENSION FUNDS, THE PUBLIC PENSION FUND GROUP,
STEVEN J. SKLAR, AS (IRA ACCOUNT BENEFICIARY), ON BEHALF OF HIMSELF AND ALL OTHERS
SIMILARLY SITUATED, RHONDA WILSON, ALMA ALVAREZ, MICHAEL R. BAHNMAIER, MARK
ADAMS, ELIZABETH EAGEN, VERNON C. DAILEY, RICHARD ADAME, ARLENE KAHN, PETRA
CHATMAN, STICHTING PENSIOENFONDS ABP, GRANT MITCHELL, NEW YORK STATE TEACHERS'
RETIREMENT SYSTEM, PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, STEVE R.
GRABER, INDIVIDUALLY, AS ASSIGNEE OF CLAIMS OF THE SRG 2008 TRUST, SCHWAB SP500
INDEX FUND, SCHWAB 1000 INDEX FUND, SCHWAB INSTITUTIONAL SELECT SP500 FUND,
SCHWAB DIVIDEND EQUITY FUND, SCHWAB CORE EQUITY FUND, SCHWAB PREMIER EQUITY
FUND, SCHWAB FUNDAMENTAL US LARGE COMPANY INDEX FUND, SCHWAB TOTAL STOCK
MARKET INDEX FUND, SCHWAB SP500 INDEX PORTFOLIO, SCHWAB MARKETTRACK GROWTH

---

[1] By stipulation filed on April 17, 2014, objectors-appellants AMP Capital Investors Limited, Colonial First State Investments Ltd, and H.E.S.T. Australia Ltd have agreed with defendants–appellees to withdraw their appeal in Docket No. 13-1573.

[2] By stipulation filed on October 24, 2013, plaintiff Charles Dornfest agreed with defendants–appellees to withdraw his appeal in Docket No. 13-1677.

PORTFOLIO, SCHWAB MARKETTRACK BALANCED PORTFOLIO, SCHWAB INVESTMENTS, SCHWAB CAPITAL TRUST, DR. SALOMON MELGEN, FLOR MELGEN, SFM HOLDINGS LIMITED PARTNERSHIP, INTERNATIONAL FUND MANAGEMENT S.A., DEKA INTERNATIONAL S.A. LUXEMBURG, DEKA INVESTMENT GMBH, DI, AARON KATZ, JOEL KATZ, SYLVIA WEISSMANN, PARKER FAMILY INVESTMENTS L.L.C., JEFFREY R. PARKER, THE 1997 JEFFREY R. PARKER FAMILY TRUST, DREW E. PARKER, THE 1994 DREW E. PARKER FAMILY TRUST, KEITH D. PARKER, JULIE M. SORIN, THE 1991 JEFFREY R. PARKER FAMILY TRUST, THE 1994 JULIE P. MANTELL FAMILY TRUST, MICHAEL A. PARKER, MARK D. WENDER, ELLIOT WENDER, PENINA WENDER, STANLEY L. WENDER, RAZELLE M. WENDER, JILL W. GOLDSTEIN, JERRY E. FINGER, AMBASSADOR LIFE INSURANCE COMPANY, SELECT INVESTORS EXCHANGE FUND, L.P., RICHARD FINGER, JEF FAMILY TRUST, 1976 REAL ESTATE TRUST, WALTER FINGER, THE JERRY E. FINGER FAMILY TRUST D/T/D 12/28/1989, THE JERRY E. FINGER FAMILY TRUST, LEO R. JALENAK, PEGGY E. JALENAK, KERS & CO., ROBERT GEGNAS, 198 LOCHA DRIVE, JUPITER, FL 334587752, STEVEN L. SHAPIRO, HARVEY M. MITNICK, NATHAN A. FRIEDMAN, BONNIE FRIEDMAN, KENNETH A. CIULLO, JOANNA CIULLO, THOMAS P. DINAPOLI, COMPTROLLER OF THE STATE OF NEW YORK, AS ADMINISTRATIVE HEAD OF THE NEW YORK STATE AND LOCAL RETIREMENT SYSTEMS AND AS SOLE TRUSTEE OF THE NEW YORK STATE COMMON RETIREMENT FUND, SCHWAB FINANCIAL SERVICES FUND,

*Plaintiffs–Appellees*,

v.

BANK OF AMERICA CORP., GARY A. CARLIN, NELSON CHAI, KENNETH D. LEWIS, JOHN A. THAIN, FRANK P. BRAMBLE, SR., WILLIAM BARNET, III, JOHN T. COLLINS, GARY L. COUNTRYMAN, TOMMY R. FRANKS, CHARLES K. GIFFORD, MONICA C. LOZANO, WALTER E. MASSEY, THOMAS J. MAY, PATRICIA E. MITCHELL, THOMAS M. RYAN, MEREDITH R. SPANGLER, ROBERT L. TILLMAN, JACKIE M. WARD, NEIL A. COTTY, JOE L. PRICE, BANC OF AMERICA SECURITIES L.L.C., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, BANK OF AMERICA, J. STEELE ALPHIN, AMY WOODS BRINKLEY, BARBARA J. DESOER, LIAM E. MCGEE, TIMOTHY J. MAYOPOULOS, BRIAN T. MOYNIHAN, BRUCE L. HAMMONDS, RICHARD K. STRUTHERS, BANK OF AMERICA CORPORATION CORPORATE BENEFITS COMMITTEE DEFENDANTS, BANK OF AMERICA COMPENSATION AND BENEFITS COMMITTEE DEFENDANTS, KEITH T. BANKS, TERESA BRENNER, CAROL T. CHRIST, ARMANDO M. CODINA, VIRGIS W. COLBERT, GREGORY CURL, JOHN D. FINNEGAN, GREGORY FLEMING, FOX-PITT KELTON COCHRAN CARONIA WALLER (USA) L.L.C., J.C. FLOWERS & CO., L.L.C., JUDITH MAYHEW JONAS, AULANA L. PETERS, JOSEPH W. PRUEHER, ANN N. REESE, MICHAEL ROSS, CHARLES O. ROSSOTTI, PETER STINGI, THOMAS K. MONTAG, KENNETH D. DAVIS, MARTIN I. FINEBERG, KENNETH A. LEWIS, MERRILL LYNCH & CO., INC., 4 WORLD FINANCIAL CENTER[3], NEW YORK, NY 10080, BANK OF AMERICA CORPORATION, 100 N. TRYON STREET, CHARLOTTE, NC 28255, JOSEPH L. PRICE, JEREMY FINEBERG, O. TEMPLE SLOAN, JR.,

*Defendants–Appellees*,

PETER KRAUS,

*Defendant*.

---

[3] Clerk is kindly asked to amend the caption as reflected above from "cneter" to "center."

———————————

Before:    WINTER, PARKER, AND HALL, *Circuit Judges*.

———————————

Appeal from the United States District Court for the Southern District of New York (Castel, *J.*) approving the final settlement of a class action lawsuit brought against defendants. Objectors-appellants challenge the district court's approval, including the distribution of funds under the settlement and the award of attorneys' fees. We **AFFIRM** the district court's approval of the final settlement.

———————————

FOR APPELLANTS:    STEVE A. MILLER, Steve A. Miller, P.C., Denver, Colorado, *for Objector-Appellant Michael Washenik*.

N. ALBERT BACHARACH, JR., N. Albert Bacharach, Jr., PA, Gainesville, Florida, *for Objectors-Appellants Leonard Masiowski, MaryAnn Masiowski, Michael J. Rinis, Babette Rinis; and Michael J. Rinis, IRA*.

FOR APPELLEES:    ROBERT N. KAPLAN, Kaplan Fox & Kilsheimer LLP, New York, New York, (Steven B. Singer, John J. Rizio-Hamilton, Bernstein Litowitz Berger & Grossman LLP, New York, New York; David Kessler, Sharan Nirmul, Kessler Topaz Meltzer & Check LLP, Radnor, Pennsylvania; Frederic S. Fox, Kaplan Fox & Kilsheimer LLP, New York, New York, *on the brief*) for *Plaintiffs-Appellees Public Pension Funds and Grant Mitchell*.

DANIEL J. KRAMER, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York, (Brad S. Karp, Audra J. Soloway, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York; Mitchell A. Lowenthal, Lewis J. Limin, Cleary Gottlieb Steen & Hamilton LLP, New York, New York; Julia Guttman, Baker Botts LLP, Washington D.C.; Colby A. Smith, Debevoise & Plimpton LLP, Washington D.C.; Adam S. Hakki, Shearman & Sterling LLP, New York, New York, *on the brief*) *for Defendants-Appellees*.

———————————

PER CURIAM:

In this appeal, we consider several challenges to the district court's approval of a settlement agreement between representative plaintiffs and the defendant Bank of America in a class action lawsuit alleging violations of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, and the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* The underlying litigation traces its origins to Bank of America's negotiations with Merrill Lynch in the Fall of 2008, which culminated in the two financial institutions merging in January 2009. Holders of Bank of America stock and derivative options brought claims against Bank of America when it was discovered that senior officers at the Bank had withheld information leading up to the shareholder vote on the merger—information that included Merrill Lynch's losses of more than $20 billion in the final quarter of 2008 and agreements regarding bonuses orchestrated by the two financial institutions in anticipation of the merger. he district court consolidated these claims and named lead plaintiffs to pursue the actions on behalf of the larger class in conformance with the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(a)(3)(B)(i). Before trial commenced, the parties negotiated a settlement agreement. Pursuant to Federal Rule of Civil Procedure 23(e), the district court approved the notice of the settlement to class members. After that notice issued, certain nonnamed class members objected to the settlement. We address these objections.[4]

---

[4] Appellees have challenged whether certain objectors-appellants demonstrated in the district court proceedings an interest as members of the certified class such that they may maintain the present appeal. An objector-appellant must demonstrate his or her status as a class member in order to raise an objection in the district court and subsequently be considered a party for purposes of Rule 3 of the Federal Rules of Appellate Procedure. *See* Fed. R. App. Pro. 3(c); *cf. Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) ("[N]onnamed class members . . . who have objected in a timely manner to approval of the settlement at the fairness hearing have the power to bring an appeal without first intervening."). The notice of the settlement approved by the district court provided as much. *See* J. App'x at 750 (requiring objectors to be "a Class Member [who] did not previously submit a request for exclusion in connection with the Class Notice"). For purposes of resolving the issues raised in this appeal, however, we need not address whether those objectors-appellants are proper parties. They have articulated no objections of their own but, rather, have joined in the arguments of those nonnamed class members who are parties to this appeal and did file objections with the district court that included proof of their respective status as class members. We need not, and

**BACKGROUND**

The amended class action complaint, filed in October 2010, recounts the conduct alleged to have been perpetrated by Bank of America and Merrill Lynch officers. The false and misleading statements made by Bank of America officers in the lead up to the merger between the two banks, plaintiffs contend, gave rise to violations of Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934, and violations of Sections 11, 12, and 15 of the Securities Act of 1933.

In mid-September 2008, Bank of America announced the potential acquisition of Merrill Lynch and a shareholder vote to follow in December of 2008. Much of the behind-the-scenes negotiations were conducted by John Thain and Michael Lewis, the CEOs of Merrill Lynch and Bank of America, respectively. These negotiations included whether Bank of America would subsidize prospective year-end bonuses for Merrill Lynch executives and employees for the 2008 year, a condition to which Bank of America agreed. The parties also agreed that these bonuses would be paid out in December of 2008, prior to the merger officially closing. Leading up to a shareholder vote on the merger, Merrill Lynch incurred losses of $7.5 billion in October, and $5.8 billion in November (with an additional "goodwill impairment" of $2.2 billion tied to the subprime residential mortgage side of Merrill Lynch's operations)—a total loss of $15.5 billion over the first two months of the quarter alone. Neither financial institution revealed to shareholders or the public the extent of Merrill Lynch's losses during the fourth quarter. In November 2008, instead of disclosing any discussion of the agreement on bonuses or Merrill Lynch's losses, Bank of America and Merrill Lynch filed a Joint Definitive Proxy Statement

---

therefore do not, resolve the appellees' challenges to those objectors whose status as class members is questionable, as the substance of all the objections properly before the court are ripe for review.

seeking approval of the merger from shareholders. Shareholders thereafter voted to approve the merger.

In their complaint plaintiffs allege that after the shareholder vote some senior Bank of America executives who were aware of Merrill Lynch's losses sought to invoke a "material adverse change" clause to terminate the merger between the banks. The plaintiffs claim that Bank of America was stopped from invoking the clause and halting the merger by then-Secretary of the Treasury Henry Paulson and then-Chairman of the Federal Reserve Ben Bernanke. The plaintiffs further allege that the government did not credit Bank of America's assertions that Merrill Lynch's insolvency took the bank by surprise because it had had three months to investigate Merrill Lynch. Bank of America, the plaintiffs allege, was nonetheless able to negotiate a resolution with the federal government: agreeing not to invoke the "material adverse change" clause so long as the federal government provided Bank of America with a $138 billion bailout, consisting of $20 billion of capital infusion and an asset guarantee of $118 billion.

At the time the merger closed on January 1, 2009, shareholders remained unaware that the projected losses for Merrill Lynch in the fourth quarter of 2008 were over $21 billion; that Bank of America executives had attempted to use the material adverse change clause to avoid the merger; that Bank of America negotiated the acquisition of Merrill Lynch with the federal government and secured an agreement that the objecting executives would not be fired if they went forward with the merger; and that, despite the losses, Merrill Lynch still paid its executives and employees $3.6 billion in bonuses. This information only became public in mid-to-late January. Once this information reached the public, Bank of America shares fell from $12.99 to $5.10 over the course of eleven days. Shareholder lawsuits promptly followed.

After the claims were consolidated, pursuant to Federal Rule of Civil Procedure 23 the district court certified the plaintiff class and designated various pension funds and other parties

as the Class Representatives. The court also approved the notice of the class action that would be distributed through a variety of media to inform the public of the action. The certified classes included:

> (1) All persons and entities who held Bank of America Corporation common stock as of October 10, 2008, and were entitled to vote on the merger between Bank of America Corporation and Merrill Lynch & Co., Inc. that was consummated on January 1, 2009;
> (2) All persons and entities who purchased or otherwise acquired the common stock of Bank of America Corporation during the period from September 18, 2008 through January 21, 2009, inclusive, excluding shares of Bank of America Corporation common stock acquired by exchanging Merrill Lynch & Co., Inc. common stock for Bank of America Corporation common stock through the merger between the two companies;
> (3) All persons and entities who purchased or otherwise acquired January 2011 call options on Bank of America Corporation common stock during the period from September 18, 2008 through January 21, 2009, inclusive; and
> (4) All persons and entities who purchased Bank of America Corporation common stock issued under the Registration Statement and Prospectus and October 7, 2008 Supplemental Prospectus of the Bank of America Corporation, in the common stock offering that occurred on or about October 7, 2008.

The notice provided potential class members with information about being a member of the class as well as the procedures to follow to opt out of the class. It also provided a deadline of May 7, 2012, to opt out of the settlement.

In November 2012, the class representatives filed a motion for preliminary approval of a negotiated settlement of $2,425,000,000.00. The motion included the proviso that funds from the settlement would go toward paying any litigation costs and attorneys' fees awarded by the court. The district court preliminarily approved the settlement in December 2012, and notice was provided to class members. The notice also allowed class members the opportunity to opt back into the class if they had previously opted out, and an opportunity to object to the

7

settlement. Following notice of the preliminary approval of the settlement, several persons filed objections.

The objections at issue in this appeal were originally raised in the district court by the Washeniks, the Masiowskis and Rinises, St. Stephen, Inc., and the Orloff Family trusts. The substance of these objections focused on whether attorneys' fees under the settlement agreement were reasonable, whether representative plaintiffs were entitled to reimbursement for litigation costs, and whether the notice complied with due process requirements, the Private Securities Litigation Reform Act, and Federal Rule of Civil Procedure 23.

The district court conducted a hearing in April to discuss the substance of these challenges and those asserted by other class members. Relevant to this appeal, the court found that the notice of the settlement complied with the preliminary approval order, constituted the best notice practicable under the circumstances, amounted to a notice that was reasonably calculated to inform class members of their rights under the settlement, and complied with Federal Rule of Civil Procedure 23, the United States Constitution, and the Private Securities Litigation Reform Act. The objectors appealed.

## DISCUSSION

We review a district court's approval of a settlement agreement for abuse of discretion. *See, e.g.*, *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 435 (2d Cir. 2007) (holding that when "we find an abuse of discretion in our review of the allocation of funds derived from class settlements, the scheme adopted by the District Court will not be upheld"); *see also McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) ("A district court's determination that a settlement in a class action lawsuit is fair, reasonable, and adequate . . . is reviewed for abuse of discretion." (internal quotation marks omitted)). "[A] district court abuses its discretion when '(1) its decision rests on an error of law (such as application of the wrong

legal principles) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.'" *Masters*, 473 F.3d at 435 (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)).

**The Award of Reimbursement Costs to Representative Plaintiffs**

Objectors-appellants first argue the district court violated the Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4(a)(2)(A)(vi), 78u-4(a)(4), when it awarded $453,003.04 to representative plaintiffs. They contend that the notice to class members—approved by the district court—was deficient because it failed to identify these expected costs and because the costs were not reasonable under 15 U.S.C. § 78u-4(a)(4). We conclude that the district court did not abuse its discretion in any of these instances.

The notice to class members states that "Co-Lead Counsel also will apply for the reimbursement of Litigation Expenses . . . which may include the reasonable costs and expenses of Class Representatives . . . directly related to their representation of the Class." J. App'x at 750. The yardstick against which we measure the sufficiency of notices in class action proceedings is one of reasonableness. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005); *see also* Fed. R. Civ. P. 23(e)(1) ("The court must direct notice *in a reasonable manner* to all class members who would be bound by the proposal." (emphasis supplied)). Here, the district court approved a notice which identified the potential award of attorneys' fees and the costs of litigating, including "the reasonable costs and expenses of Class Representatives," as well as the approximate expected cost per share of $.03. Such notice unequivocally conveys the relevant information to the respective class members. The district

9

court, therefore, neither exceeded the bounds of its discretion in approving the notice, nor violated the Federal Rules of Civil Procedure or the United States Constitution.[5]

Likewise, the costs borne by representative plaintiffs litigating this matter were reasonable, in accord with 15 U.S.C. § 78u-4(a)(4). We note that the representative plaintiffs submitted affidavits to the district court that included a thorough accounting of hours dedicated to the litigation and a statement that these hours constituted lost work time—an item for which § 78u-4(a)(4) expressly allows recovery. *See Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000) (allowing for the recovery of lost wages); *cf. In re AMF Bowling*, 334 F. Supp. 2d 462, 470 (S.D.N.Y. 2004) (denying request for wages when representative parties failed to include any assertion in affidavits to the court that they "lost time at work or gave up employer-granted vacation time"). Because these costs were reasonable and comport with § 78u-4(a)(4), objectors-appellants argument fails.

---

[5] We also are not persuaded by objectors-appellants' argument that the notice was deficient for failing to "summarize" these costs on the cover page as required by 15 U.S.C. § 78u-4(a)(7)(C). That provision reads:

> If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly *summarized* on the cover page of any notice to a party of any proposed or final settlement agreement.

15 U.S.C. § 78u–4(a)(7)(C) (emphasis supplied). "Our starting point in statutory interpretation is the statute's plain meaning," *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000), and in this instance the definition of "summarize." *Webster's Third New International Dictionary, Unabridged* (2014) defines "summarize" as "to tell in or reduce to a summary," with "summary" defined as "constituting or containing a summing up of points: covering main points concisely: summarizing very briefly." The *Oxford American English Dictionary* (2014) alternatively defines "summarize" as to "[g]ive a brief statement of the main points of (something)." Under either definition, the cover page of the notice covered the main points of these costs in accord with § 78u–4(a)(7)(C), with more precise information contained in the subsequent pages of the notice. The notice thus complied with the statutory requirements under the PSLRA in summarizing on the cover page the costs associated with the litigation, as well as attorneys' fees, and in providing a further explanation of these aspects of the settlement in subsequent pages.

**Notice of the Statement of Average Amount of Damages Per Share**

Objectors-appellants next contend that the notice was constitutionally deficient in violation of objectors' due process rights with respect to the "Statement of Average Amount of Damages Per Share." We have had occasion to reject this argument previously in light of the applicable requirements of the Private Securities Litigation Reform Act. *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 452 F. App'x 75, 77 (2d Cir. 2012) (summary order), *cert. denied* 133 S. Ct. 280. When parties state that they do not agree as to the average amount of damages per share, section 78u-4(a)(7)(B)(ii) of Title 15 requires only that the parties provide a statement "concerning the issue or issues on which the parties disagree." 15 U.S.C. § 78u–4(a)(7)(B)(ii). The relevant section of the notice—identified as "Statement of Average Amount of Damages Per Share"—begins: "The Parties do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to prevail in the Action." J. App'x at 749. The paragraph then catalogues the disagreements between the parties, including the defendants' assertion that no false or misleading statement occurred relevant to the merger with Merrill Lynch in the fourth quarter of 2008, the defendants' belief that they could demonstrate a diminution in stock value traceable to other factors than those alleged by the plaintiffs, and a general dispute between the parties over the proper methodology for determining damages. Having identified in the notice of the settlement the particulars of their differences, the parties complied with the requirements of 15 U.S.C. § 78u-4(a)(7)(B)(ii), and they were under no obligation to identify the average amount of damages per share. *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 247 n.26 (3d Cir. 2001). Accordingly, there was neither a deprivation of a constitutional right, including due process, nor did the district court exceed the bounds of its discretion in approving the notice.

**The Award of Attorneys' Fees**

"What constitutes a reasonable fee is properly committed to the sound discretion of the district court, and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (internal citation omitted). When considering common fund or class action law suits, we have recognized that "[district] courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable" given the "economies of scale[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 122. Despite challenging the reasonableness of the fees awarded in the present case, the objectors-appellants have failed to identify any specific abuse of discretion on the part of the district court, and therefore our review convinces us that the court awarded fees based upon an application of the criteria set out in *Goldberger*. 209 F.3d at 47. We are not persuaded, furthermore, by the argument that a 3% cap of attorneys' fees against the settlement total would be a more reasonable fee and that the district court erred when it declined to impose such a cap. No abuse of discretion will occur when, as in this instance, the district court fulfills both its "duty to act as a fiduciary who must serve as a guardian of the rights of absent class members and . . . the requirement of a searching assessment regarding attorneys' fees that should properly be performed in each case." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (internal quotation marks omitted).

We have considered all of objectors-appellants remaining arguments and conclude that they are without merit. The judgment of the district court approving the settlement is, therefore, **AFFIRMED**.